UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

A.L., as a minor, and his parents and next friends,
DAVID LECLAIR and LUANNA LECLAIR,

                                      Plaintiff,

-against-

THE BROADALBIN-PERTH CENTRAL SCHOOL
DISTRICT, and THE BROADALBIN-PERTH CENTRAL
SCHOOL DISTRICT BOARD OF EDUCATION,

                                      Defendants.

**COMPLAINT**

Index No.: 1:17-CV-0944 (BKS/DEP)

JURY TRIAL DEMANDED

A.L., through his parents and next friends David LeClair and Luanna LeClair, bring this civil rights action on behalf of themselves, as well as for the benefit of similarly situated students, to remedy willful acts of unlawful discrimination by the Broadalbin-Perth Central School District, and its governing body.

**PRELIMINARY STATEMENT**

1. This civil action seeks redress for the deprivation of rights secured by federal law under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12132 *et seq.*, Section 504 of the Rehabilitation Act of 1973, 42 U.S.C. §794(a), and Section 296 of the New York Executive Law ("New York Human Rights Law" or "NYHRL").

2. A.L., a student with a disability, applied for admission as a non-resident student to the District pursuant to the District's Non-Resident Tuition Policy ("the policy").

3. The District's non-resident student policy permitted school officials to deny admission of non-resident students with disabilities requiring any additional services or accommodations resulting in a cost to the District.

4. The District discriminated against A.L. when it denied his application for

admission as a non-resident student for the school year 2016-2017 based on A.L.'s disability.

5. As a result, the Plaintiff brings this action seeking a declaration that his rights were violated and damages, including punitive damages, attorney's fees, costs and injunctive relief, for the injuries he suffered as a result of the denial of his civil rights.

## JURISDICTIONAL STATEMENT

6. The jurisdiction of this Court is invoked pursuant to 26 U.S.C. §§ 1331 and 1343 because this is civil action seeking redress for the deprivation of rights secured by federal law - - specifically Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12132 *et seq.*, Section 504 of the Rehabilitation Act of 1973, 42 U.S.C. §794(a).

7. The Court has supplemental jurisdiction over plaintiff's state law claim pursuant to 28 U.S.C. §1367 because such claims are related to the claims in this action within the Court's original jurisdiction that form part of the same case or controversy under Article III of the United States Constitution.

## VENUE

8. Venue is proper under 28 U.S.C. §1391(b) because defendants are state actors and/or reside in the State of New York within the geographical coverage of the United States District Court for the Northern District of New York, and the acts and/or omissions giving rise to the claims herein alleged took place with this District.

## PARTIES

9. Plaintiff A.L. is a minor who resides in Saratoga County, within the Northern District of New York. He brings this action through his parents and next friends, David and Luanna LeClair, who also reside in Saratoga County.

10. Defendant Broadalbin-Perth Central School District (the "District"), a municipal

corporation organized and existing pursuant to the New York Education Law, a public school recipient of federal financial assistance, and a public elementary and secondary education system.

11. Defendant Broadalbin-Perth Central School District Board of Education (the "Board") is the governing body of the School District pursuant to the laws of the State of New York. Upon information and belief, the Board receives federal financial assistance.

## Factual Background

12. Plaintiff repeats and realleges all the allegations set forth above.

13. From the Fall of 2008 through the Spring of 2017, from kindergarten through the end of Eighth (8th) grade, A.L. was a student at Galway Central School District.

14. In or about June 2015, A.L. was diagnosed with Oppositional Defiant Disorder ("ODD"), and Obsessive Compulsive Disorder ("OCD"). ODD and OCD are disorders that affect neurocognitive functions of the body causing children to ignore or defy adults' requests and rules.

15. A.L. is a person with a disability as that term is defined by Section 504 of the Rehabilitation Act, Title II of the Americans with Disability Act, and the New York Executive Law ("New York Human Rights Law").

16. In October 2015, A.L. was placed in a 504 Accommodation Plan designed to ensure that A.L. received appropriate services and instruction suitable to address his disability.

17. During the period between October 2015 through March 2016, A.L. received approximately twelve (12) in-school suspensions due to A.L.'s disruptive behavior in school.

18. Mr. and Mrs. LeClair requested the school district to conduct a manifestation determination to determine whether A.L.'s disruptive behavior was a manifestation of A.L.'s

disability.

19. On July 6, 2016, the school district issued a "Section 504 Committee Manifestation Determination and Annual Review Recommendation" finding that the behavior for which A.L. was disciplined during the school year 2015-2016 was a manifestation of the Student's disability.

20. Due to their frustration with the manner school officials handled A.L.'s symptoms of his documented disability during the 2015-2016 school year, Mr. and Mrs. LeClair began to seek to enroll A.L. in a different school district for the 2016-2017 school year.

21. On August 8, 2016, Mrs. LeClair hand-delivered the following documents to the Defendant School District's registrar's office: (1) a Non-Resident Instructional Contract; (2) a Broadalbin-Perth Student Registration Application; (3) a Broadalbin-Perth Request for Records; (4) a Broadalbin-Perth Parent/Guardian Information sheet; (5) a copy of the A.L.'s 2015-2016 report card from Galway; and (6) a copy of the manifestation determination.

22. Mrs. LeClair provided the School District with a copy of the manifestation determination to provide an explanation to A.L.'s disciplinary history.

23. When submitting A.L.'s Non-Resident Student enrollment application, Mrs. LeClair explained to the District's registrar that A.L. had been diagnosed with ODD and had been subjected to discipline during the school year 2015-2016, but that Galway's CSE had determined that the behavior for which the A.L. had been disciplined was a manifestation of his disability.

24. On August 12, 2016, the District's Superintendent of Schools, Stephen Tomlinson, contacted Mrs. LeClair to request that she sign a release of A.L.'s school records from Galway so that he could review A.L.'s application for enrollment. During the telephone

conversation, Mrs. LeClair discussed A.L.'s prior disciplinary record and how A.L.'s behavior and disciplinary record were determined to have been a manifestation of A.L.'s neurological disorder (ODD).

25. On August 15, 2016, Mrs. LeClair called the District's middle school principal, Wayne Bell, to confirm receipt of A.L.'s application materials. Mrs. LeClair reiterated that her son was diagnosed with ODD, which was found to have been the cause of the behavior for which he had been disciplined while at Galway.

26. On or about August 16, 2015, the LeClairs received a letter from the District, dated August 15, 2016, denying A.L.'s application for admission as a non-resident student on the basis that he did not meet the District's criteria for admission; namely, he was not a student in "good standing" because of his disciplinary history while at Galway.

27. On or about October 17, 2016, the LeClairs filed a Complaint with the U.S. Department of Education, Office of Civil Rights (OCR), against the Defendant School District alleging the School District discriminated against A.L. on the basis of his disability when it denied his admission as a non-resident student based on his disciplinary records which had been determined to be behavior resulting from A.L.'s disability.

28. Defendants' denial of Plaintiff application for admission to the District forced the Plaintiff into a different school setting. Plaintiff was forced with the choice of remaining in his school district, which provided inadequate services to accommodate his disability, or receiving his education in a less integrated setting in a home tutoring.

29. On July 21, 2017, OCR issued a 9-page determination finding that the District's decision not to admit A.L. based on his disciplinary history, having knowledge that the behavior at issue was a manifestation of A.L.'s disability, violated The ADA, Section 504 of the

Rehabilitation Act, and the federal regulations implementing the laws. See 7/21/2017 OCR Letter attached as Exhibit A.

30. Defendants refusal to enroll A.L. on the basis of his disability has caused him harm, including, but not limited to:

  a. Denial of equal access to Defendants' facilities, programs, and services;

  b. Denial of the opportunity to interact with other students at Broadalbin-Perth Central School District during the 2016-2017 school year when he was received home tutoring;

  c. Loss of ability to interact with students at Broadalbin-Perth Central School District and stress caused by receiving home tutoring for the 2016-2017 school year; and

  d. Emotional distress and pain, embarrassment, mental anguish, inconvenience, and loss of enjoyment of life resulting from Defendants' refusal to accept A.L.'s as a non-resident student due to his disability.

### AS AND FOR A FIRST CAUSE OF ACTION
### AGAINST BROADALBIN-PERTH CENTRAL SCHOOL DISTRICT AND BROADALBIN-PERTH BOARD OF EDUCATION
### (Violation of Section 504 of The Rehabilitation Act of 1973)

31. Plaintiff repeats and realleges all the allegations set forth above.

32. Section 504 of the Rehabilitation Act of 1973 ("Section 504") and its implementing regulations provide, "no otherwise qualified individual with a disability in the United States ... shall, solely by reason of her of his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. §794(a); *see also* 34 C.F.R. §104.4(a).

33. Among the requirements, entities subject to Section 504 must provide equal

5

239951

opportunity to qualified person with disabilities to participate or benefit from any aid, benefit, or service they make available. 34 C.F.R. §104.4(b)(1)(ii).

34. Entities subject to Section 504 must avoid otherwise limiting a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving an aid, benefit, or service. 34 C.F.R. §104.4(b)(1)(vii).

35. An "individual with a disability" is defined with reference to the Americans with Disability Act ("ADA"). 29 U.S.C. § 705(20)(B); referencing 42 U.S.C. §12102(1). A person has a disability under Section 504 if they have a physical or mental impairment that substantially limits one or more of their major life activities, a record of such an impairment, or being regarded as having such an impairment. 42 U.S.C. §12102(1).

36. Major life activities include, but are not limited to, caring for oneself, performing manual tasks, walking, standing, lifting, bending, speaking, learning, and working. 42 U.S.C. §12102(1)(A). Major life activities also include "the operation of major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." 42 U.S.C. §12102(2).

37. A "qualified individual with a disability" is one who, with or without reasonable accommodations for their disability, meets essential eligibility requirements to receive services from or participate in the programs or activities of a recipient of Federal financial assistance. *See* 29 U.S.C. §794(a).

38. A "program or activity" includes local education agencies, public boards of education, and school systems. 29 U.S.C. §794(b)(2)(B), referencing 20 U.S.C. §7801(26). A "recipient of federal financial assistance" is a public or private agency or other entity to which

Federal financial assistance is extended directly or through another recipient. 34 C.F.R. §104.3(f).

39. A.L. is an individual having a mental impairment that substantially limits a major life activity; namely, his neurological bodily functions. A.L. was diagnosed with Oppositional Defiant Disorder, a cognitive impairment that causes compulsive behaviors that include rigid avoidance of provocative stimuli and difficulties with authorities such as school, or with other adults.

40. A.L.'s cognitive impairments affect a major neurological bodily function. *See* 42 U.S.C. §12102(2).

41. A.L. is an individual with disabilities as defined by Section 504. 29 U.S.C. §705(20)(B); referencing 42 U.S.C. §12102(1).

42. A.L. is an otherwise qualified individual with disabilities who meets essential eligibility requirements to receive services from or participate in the programs or activities of the District. 29 U.S.C. §794(a); 42 U.S.C. §12131(2).

43. The District and the Board's Non-Resident Student Tuition Policy ("Policy") provides that, if admission of student with disabilities as a Non-Resident Tuition student would require the District to provide additional services or accommodations resulting in cost to the District, then admission of such student with disabilities should be denied.

44. Upon learning that A.L. possessed a cognitive disability that affected his behavior, the District and the Board denied A.L.'s application for enrollment and, thus denied A.L. the opportunity to participate in or benefit from any aid, benefit, or services provided by the District on the basis of his disability. 28 C.F.R. §35.130(b)(1)(i) and (vii).

45. The District's policy is discriminatory on its face because it utilizes criteria and

methods of administration that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability. 28 C.F.R. §35.130(b)(3)(i).

46. The District and the Board discriminated against A.L. because they failed to make reasonable modifications to their policies, practices, and procedures when such modifications are necessary to avoid discrimination on the basis of disability. 28 C.F.R. §35.130(b)(7).

47. The District and the Board discriminated against A.L. because they imposed and applied an eligibility criteria for admission of Non-Resident Students to the District that screens out or tends to screen out individuals with disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered. 28 C.F.R. §35.130(b)(8).

48. The District's and the Board's refusal to accept A.L. as an Non-Resident Student based on his disability was intentional as the District and the Board knowingly denied A.L. admission under the pretext that he was not a student in "good standing" because of his disciplinary history, when the District and the Board knew that A.L.'s disciplinary history was a manifestation of his disability.

49. The District and the Board knew that A.L. was seeking enrollment with the District as an individual with disabilities because his prior school was unable to provide him with the education setting conducive to a student suffering from A.L.'s cognitive disabilities.

50. As a result of Defendants' violations of Section 504, A.L. suffered harm as set forth above.

### AS AND FOR A SECOND CAUSE OF ACTION
### AGAINST BROADALBIN-PERTH CENTRAL SCHOOL DISTRICT AND BROADALBIN-PERTH BOARD OF EDUCATION
(Violation of Title II of The Americas with Disabilities Act)

51. Plaintiff repeats and realleges all the allegations set forth above.

52. Title II of the ADA and its implementing regulations forbid public entities, including local educational agencies, from excluding or denying people with disabilities the benefits of its services, programs, or activities, or to discriminate based on disability. 42 U.S.C. §12132; 29 U.S.C. §§35.104, 35.130(a).

53. Prohibited disability-based discrimination by public entities includes the failure to provide qualified individuals with disabilities an equal opportunity to participate in or benefit from aids, benefits, or services or "otherwise limit" a qualified individual with a disability in the enjoyment of any right, privilege, aid, benefit, or service. 28 C.F.R. §35.130(b)(1)(ii) & (vii). Prohibited discrimination additionally includes the failure to make reasonable modifications as necessary to avoid discrimination against an individual based on their disability. 28 C.F.R. §35.130(b)(7).

54. An "individual with a disability" is one who has a physical or mental impairment that substantially limits one on more of their major life activities. 42 U.S.C. §12102(1).

55. Major life activities include, but are not limited to, caring for oneself, performing manual tasks, walking, standing, lifting, bending, speaking, learning, and working. 42 U.S.C. §12102(1)(A). Major life activities also include "the operation of major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." 42 U.S.C. §12102(2).

56. A "qualified individual with a disability" is one who, with or without reasonable

9

239951

accommodations for their disability, meets essential eligibility requirements to receive services from or participate in the programs or activities of the public entity. 42 U.S.C. §12131(2).

57. A.L. is an individual having a mental impairment that substantially limits a major life activity; namely, his neurological bodily functions. A.L. was diagnosed with Oppositional Defiant Disorder and Obsessive Compulsive Disorder, cognitive impairments that cause compulsive behaviors that include rigid avoidance of provocative stimuli and difficulties with authorities such as school, or with other adults.

58. A.L.'s cognitive impairments affect a major neurological bodily function. *See* 42 U.S.C. §12102(2).

59. A.L. is an otherwise qualified individual with disabilities who meets the essential eligibility requirements to receive services from or participate in the programs or activities of the District. 42 U.S.C. §12131(2).

60. The District and the Board are public entities forbidden to discriminate based on disability. 42 U.S.C. §12131.

61. The District and the Board's Non-Resident Student Tuition Policy ("Policy") provides that if admission of student with disabilities as a Non-Resident Tuition student would require the District to provide additional services or accommodations resulting in cost to the District that admission of such student with disabilities should be denied.

62. Upon learning that A.L. possessed a cognitive disability that affected his behavior, the District and the Board denied A.L.'s application for enrollment and, thus denied A.L. the opportunity to participate in or benefit from any aid, benefit, or services provided by the District on the basis of his disability. 28 C.F.R. §35.130(b)(1)(i) and (vii).

63. The District's policy is discriminatory on its face because it utilizes criteria and

239951

methods of administration that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability. 28 C.F.R. §35.130(b)(3)(i).

64. The District and the Board discriminated against A.L. because they failed to make reasonable modifications to their policies, practices, and procedures when such modifications are necessary to avoid discrimination on the basis of disability. 28 C.F.R. §35.130(b)(7).

65. The District and the Board discriminated against A.L. because they imposed and applied an eligibility criteria for admission of Non-Resident Students to the District that screens out or tends to screen out individuals with disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered. 28 C.F.R. §35.130(b)(8).

66. The District's and the Board's refusal to accept A.L. as an Non-Resident Student based on his disability was intentional as the District and the Board knowingly denied A.L. admission under the pretext that he was not a student in "good standing" because of his disciplinary history, when the District and the Board knew that A.L.'s disciplinary history was a manifestation of his disability.

67. The District and the Board knew that A.L. was seeking enrollment with the District as an individual with disabilities because his prior school was unable to provide him with the education setting conducive to a student suffering from A.L.'s cognitive disabilities.

68. As a result of Defendants' violations of Title II of the Americans with Disability Act, A.L. suffered harm as set forth above.

## JURY TRIAL DEMANDED

69. Plaintiff requests a jury trial on all issues raised by the allegations in this Complaint.

WHEREFORE, the Plaintiff requests that this Court:

(1) Enter judgment in Plaintiff's favor against Defendants;

(2) Issue a declaration stating that Defendants violated Plaintiff's rights under Section 504 of the Rehabilitation Act, and Title II of the Americans with Disabilities Act;

(3) Award Plaintiff damages in an amount to be determined at trial;

(4) Award attorney's fees pursuant to the Rehabilitation Act, the Americans with Disability Act, and 42 U.S.C. §1988; and,

(5) for such other and further relief as the Court may deem just and proper.


DATED: Albany, New York
August 23, 2017

Respectfully Submitted,

COOPER ERVING & SAVAGE LLP

By: /s/ Carlo A. C. de Oliveira
Carlo A. C. de Oliveira
Bar Roll No.: 516271
Attorneys for Plaintiff
39 North Pearl Street, Fourth Floor
Albany, New York 12207
Telephone: (518) 449-3900
Facsimile: (518) 432-3111
E-mail: Cdeoliveira@coopererving.com